EBENEZER Z. RYAN, Assignee, &c., Appellant, v. JOHN MELVIN et al., Appellees.

APPEAL FROM GALLATIN.

Where an answer is insufficient, manifestly with a design to evade material allegations of a bill, it is a circumstance which may be considered as tending to establish the averments of the bill, but such answer does not of itself amount to an admission of the truth of those averments.

If a complainant desires to take advantage of the insufficiency of an answer, the proper practice is to except to it, and compel a full disclosure.

THIS was a suit in chancery, brought to set aside a conveyance alleged to be fraudulent. The bill charges, that in November, 1844, judgments were obtained in favor of the Bank of Illinois against John Melvin, on which judgments executions were issued, and returned no property found; that John Melvin, for the purpose of hindering and delaying creditors, and especially to prevent the payment of the debts on which the judgments were recovered, conveyed his real estate to his son, James Melvin, without any valuable consideration. John Melvin, in his answer, denies the fraud, and alleges that he sold the property to James Melvin for $700, which was paid.

James Melvin denies the fraud, and says, that he purchased the property of John Melvin for $700, or thereabouts; that the sale was in good faith, without fraud, &c., of any sort, on his part; and that the purchase was true, perfect, and absolute, without any conditions whatever. Replications were filed, and proofs taken. The cause was heard before DENNING, Judge, at February term, 1852, of the Gallatin Circuit Court, and the bill dismissed. The assignee of the bank brings the cause to this court by appeal.

WM. THOMAS, for appellant.

SAMUEL D. MARSHALL, for appellees.

CATON, J. John Melvin was indebted to the bank in about the sum of two thousand dollars, upon which it commenced suits and obtained judgments in the fall of 1844. A few days after the commencement of those suits, John Melvin conveyed the premises in question to his son, James, by a deed duly executed, for the expressed consideration of seven hundred dollars, the receipt of which was acknowledged in the deed. Execu-

tions were issued upon those judgments, which were returned unsatisfied; and this bill was filed for the purpose of setting aside the conveyance of the said real estate, and subjecting it to sale for the payment of the judgments, alleging the conveyance to have been made without consideration, and that it was fraudulent and void as to the creditors of the vendor. Sworn answers were required. John Melvin answered fully, showing that the sale was *bonâ fide,* and for the consideration of seven hundred dollars, which was fully paid. James Melvin, denying any fraudulent intent on his part, answered, that the sale was absolute and unconditional "for seven hundred dollars, or thereabouts;" but he does not state explicitly, that he had actually paid the consideration. Replications were filed and proofs taken.

From these proofs, we learn, that John Melvin has never received the rents accruing upon the premises, or in any other way intermeddled with, or exercised any control over, the premises. James Melvin was a house carpenter, of moderate means, but of good credit; and he and his partner had built the house upon the premises for John Melvin, which cost $700 or $800. The evidence taken together, shows that the property was worth about the amount of the consideration money mentioned in the deed. The testimony leaves it doubtful whether John Melvin has ever been actually insolvent, and there is no evidence showing that James Melvin knew that his father was insolvent, or even embarrassed. James Melvin was a single man, and has never occupied the premises in person. Property at the time James purchased was very much depressed in New Haven, where this was situated, owing to the great scarcity of money, and also to the fact, that the town was not growing, but was rather declining. The property rented at that time for sixty dollars per annum.

The evidence in this case does not show that the sale was made with the design to defraud the creditors of John Melvin. The conveyance is good upon its face, and shows *primâ facie* that the consideration expressed in the deed was paid. It is for the party objecting to the conveyance, because it was without consideration, to rebut this presumption by proof. For this purpose, the proofs taken in this case are entirely insufficient. The insufficiency of the answer of James Melvin, as to the payment of the purchase-money, was much relied upon in argument. Where an answer is insufficient, and especially where there is a manifest design to evade material allegations of the bill, these are circumstances which may undoubtedly be considered in connection with other circumstances tending to

establish the averments in the bill thus evaded; but such insufficiency of the answer does not of itself amount to an admission of the truth of those averments.　Where an answer is insufficient, and the complainant desires to take advantage of the insufficiency, the proper practice is to except to the answer, and compel the party to make a full disclosure; and justice and propriety would seem to require such a course, and thus give the party an opportunity of answering fully where the imperfections of the answer have originated from inadvertence rather than design.　By replying to the answer, the complainant admits that it is sufficient; and by laying by till the final hearing of the cause, and then, for the first time, objecting that the defendant has evaded, or neglected to answer fully, the party may be prejudiced when there was no real design to evade the allegations of the bill.　The insufficiency of the answer, therefore, is entitled to very little consideration, unless there are strong circumstances tending to support the allegation of the bill which is not fully answered..　Such is not the case here. The bill charges that no consideration was paid for the property.　The answer of James does not expressly state that he did pay to his father the consideration expressed in the deed; but there is hardly a circumstance tending to show that he did not.　The amount was not large; he was not destitute of means; he was of irreproachable character; and his credit was good for a much larger amount than the purchase-money.　He was in active business, and, with his partner, had built the very house for his father which he purchased.　As the case stands, we are bound to conclude, that the averments in the bill, charging that the conveyance was made without consideration, are not sustained; and this, in fact, disposes of the case, unless we are prepared to hold, that a son shall not be allowed to purchase land of his father.　Admitting that John Melvin designed to convert his property into money, that he might avoid the payment of his debts, the case fails to show that James was privy to such design, or that he ever knew that his father was embarrassed, or that he had been sued.　There is no suspicious conduct on the part of either of the parties tending to the conclusion, that the property was held in trust for the father; while both swear in their answers, in the most explicit terms, that the sale was *bonâ fide*, and without any design to defraud the creditors.　It was said, upon the argument, that James Melvin, having no family to occupy it, had no use for such a house, and hence he had no business to purchase it.　The rent of sixty dollars a year may be considered some inducement to the purchase; and it would be a hard rule, to hold a single man shall not purchase a house.

The record fails to show that the conveyance was fraudulent; and the decree of the circuit court must be affirmed.

*Decree affirmed.*